**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEZESHI BINGYU XINXI KEJI YOUXIAN GONGSI., <br><br> Plaintiff, <br><br> v. <br><br> SHIBUMI SHADE, INC., <br><br> Defendants. | Case No. 1:25-cv-04276 <br><br> **Honorable Franklin U. Valderrama** <br><br> **Magistrate Daniel P. McLaughlin** |

## PLAINTIFF'S MOTION FOR RELIEF FOR ORDER TO ALLOW DEPOSITION BY VIDEO CONFERENCE

Plaintiff, HEZESHI BINGYU XINXI KEJI YOUXIAN GONGSI., by counsel, Zhonghao Law Firm, LLP, submits this response to Plaintiff's motion for relief for order to allow deposition by video conference as follows,

### I.     BACKGROUND

This action was filed on April 18, 2025. (Dkt. 1.) Following service and initial case management proceedings, the Court has continued to supervise the parties' discovery and scheduling through a series of status reports and scheduling orders. (See, e.g., Dkts. 9–12, 31–36, 38–39, 42.) In November 2025, Plaintiff extended a settlement offer to Defendant, and the parties thereafter engaged in several rounds of settlement negotiations; however, they were unable to reach an agreement and discovery has continued.

As discovery proceeded, a dispute arose regarding the manner of taking Plaintiff Hezeshi Bingyu Xinxi Keji Youxian Gongsi's corporate deposition under Federal Rule of Civil Procedure 30(b)(6). On December 19, 2025, Defendant Shibumi Shade, Inc. served Plaintiff's counsel with

a Notice of Deposition of Hezeshi Bingyu Xinxi Keji Youxian Gongsi pursuant to Rule 30(b)(6), noticing the deposition to proceed in person. Plaintiff opposed Defendant's request for an in-person Rule 30(b)(6) deposition and proposed that the deposition be taken remotely by videoconference. Counsel thereafter engaged in multiple meet-and-confer efforts in an attempt to resolve the dispute without Court intervention. Despite those efforts, Defendant refused to proceed with a video deposition and maintained its demand for an in-person examination.

At a subsequent status hearing, the Court addressed the parties' disagreement and directed that Plaintiff file any motion requesting that its Rule 30(b)(6) deposition occur via video by February 11, 2026. Plaintiff now submits this motion in compliance with the Court's directive and requests an order permitting Plaintiff's Rule 30(b)(6) deposition to proceed remotely by videoconference on mutually agreeable terms, so that discovery may move forward efficiently and without further unnecessary delay.

## II. ARGUMENT

### 1. Plaintiffs' Remote Deposition Protocol Serves the Purpose of the Federal Rules of Civil Procedure and Is Supported by Good Cause

Rule 30(b)(4) expressly authorizes a deposition "by telephone or other remote means," and the Court has broad discretion to order remote procedures that advance the Federal Rules' core objectives. *See* Fed. R. Civ. P. 30(b)(4). That discretion should be exercised consistent with Rule 1, which requires the Rules be "construed, administered, and employed" to secure the "just, speedy, and inexpensive" determination of every action. *See* Fed. R. Civ. P. 1. As courts in this District have recognized, discovery should not "grind to a halt" when remote procedures can move the case forward efficiently and fairly. *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, Mem. Op. & Order (N.D. Ill. June 25, 2020) (Gilbert, M.J.) (granting in large part motion to

proceed with depositions by remote means and emphasizing workable protocols and the need to keep litigation moving).

Good cause exists here based on the specific, sworn facts set forth in the Declaration of Yinping Song. Ms. Song is the General Manager and designated deponent for Plaintiff, a three-person Amazon online-store team in China. (Song Decl. ¶ 2.) Requiring in-person deposition travel to the United States would impose disproportionate expense and practical hardship: approximately 24 hours of travel each way; airfare estimated to exceed USD 2,000 round trip; hotel and meals exceeding USD 200 per day; local transportation and other incidentals; and additional attorney time that increases total cost uncertainty—collectively pushing estimated costs toward at least USD 10,000 for a company of Plaintiff's size. (Id. ¶ 3.) Those burdens are not abstract. Plaintiff is under acute financial pressure, has substantial debt and unsold seasonal inventory, and is currently paying significant Amazon storage fees (over USD 5,000 per month) sometimes by credit card because of insufficient funds in its Amazon account. (Id. ¶¶ 6, 9.) Rule 30(b)(4) was designed for precisely this type of scenario—where remote means can preserve the substance of deposition testimony while avoiding unnecessary cost and delay—and Rule 1's proportionality-driven objectives strongly favor remote examination on these facts. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 30(b)(4); *Broiler Chicken*, Mem. Op. & Order

Plaintiff also faces substantial administrative and timing burdens associated with international travel. Ms. Song does not currently have a valid U.S. visa, and obtaining one would require a new application with uncertain outcome, including preparation of extensive materials and an in-person consular interview after a wait that is often at least a month (and sometimes longer), followed by additional processing time. (Song Decl. ¶¶ 4–5.) Courts recognize that where "legitimate reason[s]" support remote testimony, the inquiry turns to whether the opponent can demonstrate concrete

prejudice that cannot be mitigated by a reasonable protocol. *See, e.g.*, *Guillen v. Bank of Am. Corp.*, 2011 WL 3939690, at *1 (N.D. Cal. Aug. 31, 2011) (cost-saving can constitute good cause; once shown, opponent must show prejudice); *Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2006) (leave for telephone depositions "granted liberally"); *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986) (same). Here, Plaintiff's good-cause showing is supported not only by cost and timing, but also by unavoidable uncertainty and risk in visa issuance—factors that can readily stall discovery if in-person attendance is required. (Song Decl. ¶¶ 4–5.)

videoconference depositions are not second-best substitutes that materially impair examination. Modern video technology preserves live testimony and permits counsel to observe the witness's demeanor, ask spontaneous follow-up questions, and create an accurate record with realtime transcription and videorecording—features that were not available when older "travel-to-the-forum" cases relied on telephone depositions. *See SEC v. Aly*, 320 F.R.D. 116, 121–23 (S.D.N.Y. 2017) (ordering videoconference deposition; rejecting generalized arguments that remote testimony prevents adequate assessment of credibility; noting that exhibit logistics are manageable through advance exchange and practical measures). Consistent with that reasoning, this District has explained that technological or logistical issues can be addressed through protocols and do not justify halting or delaying discovery where remote procedures can move the case forward. *See Broiler Chicken*, Mem. Op. & Order (N.D. Ill. June 25, 2020).

Plaintiff's Declaration further establishes non-financial hardship that supports remote examination. Ms. Song is the primary caregiver for her fifth-grade son and bears daily responsibilities that cannot easily be transferred for an extended international trip of uncertain duration. (Song Decl. ¶ 10.) These are concrete, individualized facts—not generalized inconvenience. Allowing the deposition to proceed by videoconference eliminates the need for

4

prolonged travel and disruption while fully preserving Defendants' ability to examine the witness effectively. *See* Fed. R. Civ. P. 30(b)(4); *Aly*, 320 F.R.D. at 121–23.

the posture of this dispute underscores why Rule 1 favors an efficient remote deposition protocol. Plaintiff filed this declaratory judgment action after Defendants initiated an Amazon APEX proceeding, and Plaintiff faces the risk of losing significant R&D investment and manufactured inventory if it cannot effectively respond. (Song Decl. ¶ 7.) Plaintiff has invested heavily in product development and production (including substantial mold costs and inventory exceeding one million RMB) and continues to carry significant debt and ongoing storage fees. (Id. ¶¶ 8–9.) A remote deposition protocol allows discovery to proceed promptly on a reliable record without imposing disproportionate costs that could effectively penalize Plaintiff for litigating in a forum connected to Defendants' U.S.-market enforcement actions. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 30(b)(4); *Broiler Chicken*, Mem. Op. & Order.

For these reasons, and because Defendants cannot show any concrete prejudice that cannot be addressed through standard safeguards (e.g., secure videoconference platform, on-the-record administration of the oath, realtime transcription, advance exchange and labeling of exhibits, prohibition on off-camera communications, and videorecording), the Court should find good cause and order that Plaintiff's deposition be taken by videoconference under Rule 30(b)(4). *See* Fed. R. Civ. P. 30(b)(4); *Broiler Chicken*, Mem. Op. & Order; *Aly*, 320 F.R.D. at 121–23.

## 2. Remote Depositions are a Presumptively Effective and Non-Prejudicial Alternative to In-Person Discovery

Federal Rule of Civil Procedure 30(b)(4) expressly authorizes depositions "by telephone or other remote means," and courts in this District have recognized that remote testimony is not an exceptional procedure but a practical, effective tool that advances Rule 1's mandate of the "just,

speedy, and inexpensive" determination of actions. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 30(b)(4); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, Mem. Op. & Order (N.D. Ill. June 25, 2020) (Gilbert, M.J.) (granting in large part motion to proceed with depositions by remote means and explaining that litigation cannot be allowed to grind to a halt where remote procedures can move discovery forward). Consistent with that approach, remote depositions are routinely permitted where they reduce expense, avoid unnecessary delay, and do not impair the fairness of the examination—particularly when the parties can use standard safeguards such as advance exchange of exhibits, realtime transcription, and videoconference recording.

Defendants may rely on older authority holding that foreign or nonresident *plaintiffs* who chose to sue in this forum should ordinarily appear here for deposition. *See, e.g.*, *Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08 C 3939, 2008 WL 10718842, at *2 (N.D. Ill. Aug. 28, 2008); *Monetti, S.p.A. v. Anchor Hocking Corp.*, No. 87 C 9594, 1992 WL 77677, at *3 (N.D. Ill. Apr. 6, 1992) ("Plaintiff has elected to bring suit in this district and will not be heard now to complain that traveling here is burdensome."). But those cases are distinguishable in both premise and era. They trace to decisions such as *Clem v. Allied Lines Int'l Corp.*, 102 F.R.D. 938, 939–40 (S.D.N.Y. 1984), decided when the realistic alternative to travel was often a *telephone* deposition—where counsel could not see the witness's demeanor or reliably manage exhibits in real time. Modern videoconference technology eliminates those historic limitations. Consistent with Rule 30(b)(4) and Rule 1, courts now routinely recognize that video depositions provide an effective, non-prejudicial substitute for in-person testimony, including outside the pandemic context. *See, e.g.*, *Securities & Exch. Comm'n v. Aly*, 320 F.R.D. 116, 121–23 (S.D.N.Y. 2017) (ordering videoconference deposition and rejecting generalized arguments that remote testimony impairs credibility assessments; noting logistical issues can be addressed through advance exchange of

exhibits and other practical measures); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, Mem. Op. & Order (N.D. Ill. June 25, 2020) (Gilbert, M.J.) (recognizing remote depositions as a workable means to keep discovery moving, and that technology issues do not justify halting depositions where protocols can mitigate them). Accordingly, even if the Court considers the general principle that a plaintiff's forum choice may weigh in favor of an in-forum deposition, that principle does not compel travel where a videoconference deposition preserves the essential fairness of the examination while reducing cost, delay, and undue burden—and where the opposing party can show no concrete prejudice beyond a preference for "live" attendance.

With globalization and rapid technological change, the premise underlying older "travel-to-the-forum" deposition decisions fits far less neatly in modern cross-border litigation. Entire sectors—e-commerce, blockchain, Web3, and other digitally delivered business models—often blur or even eliminate meaningful geographic boundaries for commercial activity, customers, and alleged misconduct. In that environment, U.S. courts increasingly function as practical "global" fora for resolving disputes arising out of international business relationships and worldwide digital markets. The public interest under Rule 1 therefore favors procedures that allow courts to manage and resolve transnational cases efficiently without imposing unnecessary cost and delay simply because a witness resides abroad. Allowing depositions by videoconference under Rule 30(b)(4) advances that interest: it preserves live testimony and a reliable record while reducing travel burdens, avoiding scheduling bottlenecks, and enabling discovery to proceed promptly in cases with foreign parties or witnesses—ultimately improving the Court's ability to adjudicate international disputes fairly and efficiently.

### 3. Further Delay of Defendant Discovery Will Unduly Prejudice Class Plaintiffs and Impede the Litigation Schedule

Requiring in-person testimony would inject substantial uncertainty and delay because Plaintiff's designee, Yinping Song, does not currently have a valid U.S. visa and would need to start the visa process from scratch—an undertaking that commonly takes months, not weeks, and remains uncertain in outcome. (Song Decl. ¶¶ 4–5.) As Ms. Song explains, obtaining a visa requires preparing a new application and supporting materials, scheduling a consular appointment (often with a wait time of at least one month and sometimes longer), appearing in person for an interview at a U.S. consulate in China, and then waiting additional business days after the interview for visa issuance. (*Id.*) Even after completing these steps, issuance is not guaranteed; current policies are described as relatively strict with a meaningful risk of denial. (*Id.*) This monthslong, uncertain process is itself prejudicial because it prevents the parties from reliably setting and completing a key deposition within the discovery period and creates a material risk of knock-on disruption to follow-on discovery, motion deadlines, and the Court's scheduling order.

## III. <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully request this Court to grant Plaintiff's motion for relief for order to allow deposition by video conference this case.

Date:     02/11/2026                          Respectfully submitted,

By:  /s/ *Ruixin Lu*      .
Ruixin Lu, Esq.
Bar No. 5282058
ray@zhhlaw.com
Zhonghao Law Firm, LLP
260 Madison Avenue, 8th Fl,
New York, NY 10016
Telephone: (631) 268-5788
Facsimile: (919)398-8696

*Attorney for Plaintiff*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a true and correct copy of the above and foregoing document was electronically filed on February 11, 2026 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

/s/ *Ruixin Lu*
Ruixin Lu